**FORT WORTH & D. C. RY. CO. et al. v. CAPEHART.**

No. 2787.

Court of Civil Appeals of Texas. Waco.
April 1, 1948.

Rehearing Denied May 6, 1948.

Holloway, Crowley & Hudson, of Fort Worth, for appellants.

Tyson, Dawson & Dawson, of Corsicana, and Gallagher, Francis & Bean, of Dallas, for appellee.

LESTER, Chief Justice.

This is a suit by O. T. Capehart against the Forth Worth and Denver City Railway Company et al. to recover damages as the result of the alleged injuries his wife sustained in passing over the defendants' track at a public crossing in the town of Navarro.

On this particular morning the railroad tracks at said crossing were being repaired, and at the time of the accident in question the section crew had removed some of the pieces of timber that were laid on top of the cross-ties, which were from eight to ten inches in width. The crew had taken out the one on the outside of the rail on the east side and one on the inside on the east and then one on the inside and one on the outside of the west rail. The railroad at this point runs north and south and a paved public road crosses east and west at right angles. Mrs. Capehart, who was a resident of said town and was eight and a half months advanced in pregnancy, was traveling on this highway headed west, and as she approached the railroad crossing she says that the foreman of the section crew signaled her to proceed across, and in doing so she received serious bodily injuries to the extent that her baby was born dead some ten days later. The foreman testified that he signaled Mrs. Capehart not to cross the tracks at said place but to detour over another road.

The case was tried before a jury and the court submitted it upon special issues, and the jury made the following findings: (1) That the defendants' foreman did not direct Mrs. Capehart on the occasion in question to drive over the crossing being repaired; (2) that the defendants' foreman failed to give reasonable warning to Mrs. Capehart on the occasion in question of the defective condition of the crossing before she attempted to cross the same; (3) that such failure was negligence on the part of said foreman, and (4) that such negligence was a proximate cause of the injuries suffered by Mrs. Capehart. The jury also found in favor of the plaintiff on the theory of discovered peril; that the injuries complained of were not the result of an unavoidable accident; that Mrs. Capehart did not fail to keep a proper lookout for her own safety at the time and on the occasion in question; that the defendants' foreman did not give signals to Mrs. Capehart prior to her using the crossing reasonably sufficient to indicate that the crossing was under repair and she should use the dirt crossing to the south; that prior to going across the crossing Mrs. Capehart did not know that there were planks out of said crossing.

Appellants' first proposition challenges the sufficiency of the evidence to support the issue of discovered peril. The theory upon which this doctrine of the law is predicated is that if a person is in a position of peril and if that position is discovered and realized by another in sufficient time that, by the exercise of ordinary care, with the means at his command, he could avoid injuring such person,

and if he fails to do so and such party is injured as a proximate result of such failure, the party so injured can recover, even though he himself is guilty of contributory negligence; that is, a party has no right to wilfully or wantonly injure another. W. A. Morgan & Bros. et al. v. Missouri, K. & T. Ry. Co. of Texas, 108 Tex. 331, 193 S.W. 134. The question before us is whether the plaintiff has discharged the burden cast upon him by establishing by a preponderance of the evidence some of the material elements of the doctrine of discovered peril: First, that the removal of the timbers and dirt from the crossing rendered it dangerous and that the danger arising therefrom to Mrs. Capehart in crossing the same in the manner in which she did was imminent; and second, that the appellants' foreman actually discovered or realized such danger before she went across. As we understand the rule, it is the certainty of the danger of being injured that must be realized rather than the certainty of being injured, but it implies more than a probability of danger or a mere possibility of being injured, and the mere fact that a party might be guilty of negligence in not realizing such danger will not suffice. Galveston, H. & S. A. Ry. Co. v. Wagner, Tex.Com.App., 298 S.W. 552; Panhandle & S. F. Ry. Co. v. Napier, 135 Tex. 314, 143 S.W.2d 754, 756; San Antonio & A. P. Ry. Co. v. McMillan, 100 Tex. 562, 102 S.W. 103, 104; Texas & N. O. Ry. Co. v. Adams, Tex.Civ.App., 27 S.W.2d 331, 336; Parks v. Airline Motor Coaches, Tex.Sup., 193 S.W.2d 967, 969; Lotta v. Kansas City Public Service Co., 342 Mo. 743, 117 S.W.2d 296. So, before the plaintiff could claim the benefit of this humanitarian doctrine he had the burden of proving that his wife was in danger of being injured if she attempted to cross at this particular place, and that such danger to her was imminent, and that the appellants' foreman realized the same. The record before us reveals that upon this particular occasion the crossing at this point was under repair, with several pieces of timber having been removed and by their removal depressions from five to eight inches in depth and from eighteen to twenty-two inches in width were created between the rails. As Mrs. Capehart approached said crossing she said she came to a complete stop about 10 or 15 feet from the same. The foreman testified that she stopped her car some 40 or 50 feet from said crossing, but whatever distance she was from the same, she says when she started up again she put her car in low gear and went across the tracks; that in doing so she was thrown violently against the steering wheel and bounced over the car. There is no contention on the part of the appellee that the foreman knew that she was in a pregnant condition, nor is there any evidence from which we can conclude that he observed her condition in this respect on that morning or that he had any opportunity to do so. She was sitting in her car and her car stopped there only a second. Of course, the foreman was acquainted with the exact condition of the crossing on this occasion and he was warning people not to cross at this point, but it is the duty of railroad employees to warn people of any possible danger or of any discomfort to any great extent that they might experience in passing over their crossings while the same are being repaired. Now, can it be said that a crossing in this condition created such a hazard that a person crossing over it in an automobile traveling in low gear would be in danger of being injured, and that such danger was certain and imminent, and that the appellants' foreman actually realized it before Mrs. Capehart went across the track? He testified that he did not realize such danger. Of course such denial is not always controlling. If the holes or depressions testified about had been of such magnitude that they were bound to have excited in the mind of appellants' foreman or in the mind of an ordinarily prudent person an apprehension that Mrs. Capehart, in crossing over said tracks, would be in danger of being injured, and if the foreman could have prevented her injury in the exercise of ordinary care with the means at his command, then there could be no doubt but what the rule of discovered peril would apply. Or, under the present state of facts, if the foreman had known of Mrs. Capehart's pregnancy, we would not feel called upon to disturb the jury's

finding upon this issue. Or, if Mrs. Capehart had been traveling at a fast rate of speed as she approached the crossing oblivious of its condition and the foreman could have, in the exercise of ordinary care, prevented the injury, then we would have an entirely different situation. But considering the evidence as a whole, in view of the exact condition of the crossing and the low rate of speed Mrs. Capehart was traveling when she crossed appellants' track, we are of the opinion that the danger was not so imminent and immediate as to bring her within the doctrine of discovered peril.

The appellants, by way of alternative pleadings, alleged: "That if the plaintiff's wife did not know that said crossing was under repair and did not know that the planks were out and did not know that she was being signaled around to the other crossing, such lack of knowledge on her part was due to her failure to exercise ordinary care for her own safety in maintaining a lookout on the occasion in question, and defendants allege that plaintiff's wife was negligent in: (a) not keeping the proper lookout to see whether said crossing was under repair; (b) not keeping a proper lookout to see whether the planks were out in said crossing; (3) not keeping a proper lookout to see the signals which defendants' section foreman was giving her, and defendants allege that one or more acts of negligence was a proximate cause of her alleged injuries." The court, in its main charge, submitted to the jury Special Issue No. 14, as follows:

"Do you find from a preponderance of the evidence that Mrs. Thelma Capehart failed to keep a proper lookout for her own safety at the time and on the occasion in question?"

To which the jury answered: "She did not fail."

This issue was followed by Nos. 15 and 16, which submitted, respectively, negligence and proximate cause, and were to be answered only if the jury answered Issue No. 14 in the affirmative. The court defined "proper lookout" as follows:

"By the term 'proper lookout' as used in this charge is meant such a lookout as a person of ordinary prudence would exercise under the same or similar circumstances."

Appellants objected to the foregoing issues as follows:

"Defendants object and except to Special Issues Nos. 14, 15 and 16 for the reason that they are not the submission of the specific issues of negligence contained in the defendants' answer on which said defendants went to trial, and said issues constitute merely a general submission of the issue of look-out without directing the jury's attention to the specific items of negligence pleaded by the defendants, and do not permit the jury to pass upon, directly, each of the forms of look-out raised by the pleadings and evidence herein and defendants request the court to substitute for said issues the defendants' Requested Issues Nos. 2, 3 and 9."
and tendered to the court the following special issues and requested the court to submit the same:

"Defendants' Requested Issue No. 2.

"(A) Do you find from a preponderance of the evidence that Mrs. Capehart failed to keep a proper lookout to see whether the planks were out of said crossing?"

(B) Inquired if she did fail to keep a proper lookout, was such failure the proximate cause of her injuries.

"Defendants Requested Issue No. 3.

"(A) Do you find from a preponderance of the evidence that Mrs. Capehart failed to keep a proper lookout to see whether said crossing was under repair?"

(3) Inquired if she did fail to keep a proper lookout, was such failure the proximate cause of her injuries.

"Defendants' Requested Issue No. 9.

"(A) Do you find from a preponderance of the evidence that Mrs. Capehart, on the occasion in question, failed to keep a proper lookout for signals from defendants' section foreman?"

(B) Inquired if she did fail to keep a proper lookout, was such failure the proximate cause of her injuries.

Rule 279, Vernon's Texas Rules of Civil Procedure, provides: Where the court has

fairly submitted the controlling issues raised by such pleading and the evidence, the case shall not be reversed because of the failure to submit other and various phases or different shades of the same issue." On this feature of appellants' defense, what was the controlling issue? Wasn't it the question of whether Mrs. Capehart failed to keep a proper lookout for her own safety in respect to the instances pleaded by appellants? If she did fail to do so and such failure proximately contributed to her injuries, then such finding would defeat her right to any recovery herein. Among the cases cited by appellants are two which have been handed down since the new rules of procedure went into effect. The first one is City of Forth Worth v. Lee, 143 Tex. 551, 186 S.W.2d 954, 159 A.L.R. 125, which was a suit to recover for personal injuries sustained by Victor Atkins, who was employed as a delivery boy. One dark, rainy night, while he was making a delivery, he thought he was on a through street but instead he was on one that did not run through but was blocked by railroad tracks; and after leaving the traveled portion of the street he went some 55 ft. to where he fell over an embankment and was seriously injured. The court submitted two issues on proper lookout on the part of Victor: the first inquired whether Victor failed to keep a proper lookout ahead for his own safety as he approached the intersection of 30th and Pecan Sts; and the second inquired whether he failed to keep a proper lookout on the street on the occasion in question. Appellant requested the court to submit whether Victor, at the time of and just prior to the accident, kept such a lookout as a person of ordinary care and prudence would have kept under the same or similar circumstances. The court held that the two issues submitted confined the consideration of the jury to the character of lookout maintained by Victor up to the time he left the traveled portion of the roadway, and did not permit the jury to pass on the manner of lookout kept by him during the time he traveled the 55 feet between the point where he left the roadway and until he went over the embankment. The defendant had pleaded: "In approaching the point where the accident occurred he (Atkins) negligently and carelessly failed to keep a proper lookout for any dangers, excavations, obstructions or other impediments that he might encounter." The court held that this pleading and the testimony raised the issue of proper lookout during the time he was traveling the 55 feet after leaving the roadway, and that the issue as requested should have been submitted to the jury.

The second case cited by appellants is Graham v. Gatewood, Tex.Civ.App., 166 S. W.2d 768, 769. The appellant pleaded that the deceased was guilty of contributory negligence in failing to observe the approaching car from the east and the approaching truck from the west. The court submitted to the jury an issue in the following form: "Do you find from a preponderance of the evidence that while Ellis Lee Gatewood was on the main traveled portion of the highway immediately prior to the accident, if you have found he was on the main traveled portion of the highway at said time, failed to keep a proper lookout for cars approaching him from the west on such highway?" The appellant excepted and objected to the issue for the reason "that it required a finding of the jury that the deceased was on the main traveled portion of the highway in order to be guilty of contributory negligence in failing to keep a proper lookout and thus limits the negligence pleaded as a defense." Appellant tendered and requested the court to submit the following issue: "Do you find from a preponderance of the evidence that Ellis Lee Gatewood failed to keep a proper lookout for traffic approaching from the west?" The court held that the testimony showed that the highway, at the point where the accident occurred, consisted of a paved strip 18 ft. wide and that this strip constituted the main traveled portion of the highway, or what is commonly called the pavement; that on each side of this paved strip there were shoulders practically level from the pavement to the bar pit, which constituted a space on which cars and trucks may be parked, and the court held that the trial court should not have confined the issue to the time while Gatewood was on the main traveled portion of the

highway but that said issue should have been submitted without such condition.

■ So the above two cited cases hold that the issues submitted by the court on the question of proper lookout were too restrictive and were not sufficiently broad to cover the defendants' defensive issue of proper lookout. But in the instant case the appellants say that the issue as submitted is not restrictive enough but that it is too general, in that it does not confine the consideration of the jury to the specific forms of lookout complained of, and they say the court committed error in refusing to submit separately each instance pleaded in this respect to the jury, notwithstanding the fact that the issue submitted was broad enough to cover all the forms of failure to keep a proper lookout on the part of Mrs. Capehart that were raised by the pleadings. We feel that the issue in the form in which it was submitted was more favorable to the appellants than it was to the appellee, in that the jury was permitted to consider the evidence on the question of the failure on the part of appellee's wife to keep a proper lookout not only in respect to the three particular instances pleaded by them, but for any other reason that the jury might believe from the evidence that Mrs. Capehart failed to keep a proper lookout for her own safety on the occasion in question. We certainly recognize and are in hearty accord with the rule that each party has an equal right to have all the issues supporting his cause of action or defense fairly submitted to the jury, but in the submission of proper lookout in this case didn't the jury have the opportunity to and didn't they pass upon the question of whether Mrs. Capehart failed to keep that character of lookout that a person of ordinary prudence would have kept under the same or similar circumstances in seeing the signals of the foreman, in seeing that the planks were out of the crossing, and in seeing that the crossing was under repair? If said issue as framed was broad and clear enough to include all three of these instances pleaded, then it would not be incumbent upon the court to submit the same question to the jury in separate issues. Suppose the appellants, instead of pleading three particular instances of failure to keep a proper lookout, as they did, but had pleaded say ten or more of such specific instances, could it be successfully contended that the court would have to submit each one separately when it had already fairly, clearly and succinctly submitted them all in one issue? We do not think so. One of the purposes of Rule 279 is to shorten a charge when it can be done without prejudice to one of the parties. Believing that the issue was fairly and fully submitted to the jury in a form more favorable to appellants than to appellee, we are of the opinion that the court did not commit reversible error in refusing the requested special issues. Airline Motor Coaches, Inc., v. Howell, Tex.Civ.App., 195 S.W.2d 713, 715; Northeast Texas Motor Lines Inc. v. Hodges, 138 Tex. 280, 158 S.W.2d 487; Austin v. De George, Tex.Civ.App., 55 S.W.2d 585; Hunter v. B. E. Porter Inc., Tex.Civ.App., 81 S.W.2d 774; Service Mutual Ins Co. of Texas v. Territo, Tex. Civ.App., 147 S.W.2d 846; Rainwater v. McGrew, Tex.Civ.App., 181 S.W.2d 103.

■ Appellants contend that the court erred in admitting testimony that Mrs. Capehart in going across the crossing was a possible cause of the child's death, and the testimony admitted as to the condition of the child at the time of its birth was inflammatory and prejudicial to them. The court, in his charge, instructed the jury as follows:

"You are further instructed as part of the issue on damages, if any, that the plaintiff cannot recover anything for his wife's pain and suffering, past or future, or her disability, past or future, growing out of the normal birth of her child which she was presently expecting, but on the aggravation, if any, thereof proximately caused, if it was, by defendants' negligence, if any, and you, therefore will exclude from your consideration and make no allowance for normal pain, suffering and disability, if any, past and future, of Mrs. Capehart because of childbirth. The plaintiff cannot recover in this suit damages of any character, based alone on the fact that the child was born dead, and you will there-

fore exclude the loss of the child from your consideration and you must not allow any sum whatsoever to compensate plaintiff or his wife for the death of the child, or for mental suffering incident to the loss of its society. You are instructed that, in answer to said issue, you cannot consider or allow anything for medical or doctor's bills, if any, past or future."

For the sake of brevity we will not attempt to set out the testimony concerning the questions raised by this assignment, but suffice it to say that the testimony admitted was proper for the consideration of the jury in determining whether Mrs. Capehart was injured as alleged, and if so, the extent of the injuries received by her, and the evidence adduced by her, taken as a whole, raised a fact issue to be passed upon by the jury. But if the testimony concerning the child was inadmissible, which we do not agree, the appellants waived any error that they might have had by permitting the facts to be fully developed before the jury prior to any objection made by them.

The court submitted to the jury its Special Issue No. 4 as follows:

"Do you find from a preponderance of the evidence that the defendants' foreman, Ivy Reynolds, failed to give reasonable warning to plaintiff's wife, Mrs. Thelma Capehart, on the occasion in question of the defective condition of the crossing before she attempted to cross the same?"

Special Issue No. 5 inquired whether such failure, if any, was negligence upon the part of the appellants' foreman, and No. 6 was conditioned upon an affirmative answer to No. 5 and inquired whether such negligence, if any, was a proximate cause of the injuries, if any, suffered on the occasion in question by Mrs. Capehart. In connection with Issue No. 6 the appellants tendered and requested the court to give the following instruction:

"If you find from a preponderance of the evidence that Mrs. Capehart knew, or in the exercise of ordinary care should have known, that said crossing was under repair, you will answer the above issue 'No'."

The court refused said instruction and this assignment is predicated upon such refusal. Rule 277, Vernon's T. R. C. P., in part provides:

"In submitting special issues the court shall submit such explanatory instructions and such definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues, and in such instances the charge shall not be subject to the objection that it is a general charge."

The court gave the generally accepted and approved definition of proximate cause. Special Issue No. 6 as submitted, or a similar one, is found in every charge of the court where the suit is founded upon the allegation of negligence, and the question therein involved was not so intricate that the jury could not have easily understood the issue to be decided by them and an explanatory charge such as the one requested was not necessary for the jury's enlightenment in order that they might intelligently pass upon the question presented to them for their determination. If it was proper for the court to have given an explanatory instruction in connection with Issue No. 6, which we do not agree, the one tendered by the appellants was not a correct one and the court properly refused the same. This charge, if given, would have in effect instructed the jury that if Mrs. Capehart knew, or in the exercise of ordinary care should have known, that the crossing was under repair, that appellee would not be entitled to recover for her injuries, if any, received as a proximate result of the negligence, if any, of the appellants' foreman in failing to give her reasonable warning of the defective condition of said crossing. It did not take into consideration the exact condition of the crossing at the time, whether the same was in a dangerous condition, or the degree of care that Mrs. Capehart might have exercised for her own safety in passing over appellants' track, or the negligence of the appellants' foreman in failing to give Mrs. Capehart reasonable warning of the defective condition, if any, of said crossing, but under said instruction, if she knew, or could have know by the exercise of ordinary care, the simple fact that the crossing was under repair, regardless of the nature or extent

of such repairs being made or the condition it was in, he could not recover. We think it is manifestly apparent that said tendered instruction was erroneous and should not have been given. Davis v. Pettitt, Tex. Com.App., 258 S.W. 1046; Boaz v. White's Auto Stores, 141 Tex. 366, 172 S.W.2d 481, 484; Fort Worth & D. C. Ry. Co. v. Rogers, Tex.Civ.App., 62 S.W.2d 151, 157.

We have considered the remaining assignments of appellants and each of them is hereby overruled.

Finding no reversible error, the judgment of the trial court is therefore affirmed.