## PERKINS et al. v. NAIL et al.
### No. 821.

Court of Civil Appeals of Texas. Eastland.
March 13, 1931.

Rehearing Denied April 3, 1931.

Seay, Seay, Malone & Lipscomb, of Dallas, and Cox & Hayden, of Abilene, for appellants.

Scarborough, Ely & King, of Abilene, for appellees.

HICKMAN, C. J.

This suit was instituted by appellee Mrs. Emma Nail, joined pro forma by her husband, J. A. Nail, against appellants W. D. Perkins and J. A. Stowe, to recover damages for personal injuries sustained by Mrs. Nail as a result of her having been struck by an automobile owned by appellants while being operated by their agent and employee, Neal Jackson. Briefly, the facts upon which the cause of action was predicated are as follows: Mrs. Nail was operating a boarding house in the city of Abilene. A boarder by the name of Harris became indebted to her for board and lodging of himself and family, and, to secure her for the amount, pledged to her a Ford automobile. He drove the same into her back yard and delivered the possession thereof to her. Later Harris went to the place of business of appellants, who were engaged in the garage and storage business, and employed them to go to the premises of appellee and pull the Ford car into their place for storage. He did not inform appellants that the car was pledged to appellee or any other person. Appellants sent an employee, Neal Jackson, to appellee's premises to tow in the Harris car. Harris and wife accompanied him. Mrs. Nail protested against the removal of the car, and she and her son sought to prevent Jackson from taking it. Seeing that her protests were without avail, Mrs. Nail placed herself in the only driveway leading out of the back yard. Her description of the occurrence was as follows:

"When it became apparent that he was going to move the car, I made a dive for the driveway, and ran just as hard as I could. I got into the gate of the driveway. When I got into the driveway the car was standing preparatory to leaving, with Jackson in it. This car from the garage was standing back where it stopped in the beginning.

"In the driveway I stood facing them. I ran down there, turned around facing the cars. With respect to the fence, I was standing at the gate, the fence was on either side; I was standing at the opening. I stood there, threw up my hands, and told him they could not take the car—told them to stop. They did not stop. They certainly did drive right on. I threw up my hands and told him to 'stop, stop, stop,' two or three times. They came right on. They did not slow down, or make any effort to stop. They did not say anything about stopping.

"When they got where I was they knocked me out in the street."

The case was submitted on special issues, and by their answers thereto the jury found, among other things, that Jackson intentionally drove his car against Mrs. Nail. The answers acquitted Mrs. Nail of contributory negligence, and assessed the damages at $900. Upon this verdict judgment was rendered for the amount of damages found by the jury, and appellants have brought the case to this court for review.

■■ The principal contention relied upon by appellants in their brief is, that a person may not court or invite injury to his person and recover damages for injuries thus incurred. That this is a correct statement of an abstract principle of law is well settled by the highest courts in many jurisdictions, including the Supreme Court of our own state. In the opinion in Galveston, H. & S. A. Ry. Co. v. Zantzinger, 92 Tex. 365, 48 S. W. 563, 566, 44 L. R. A. 553, 71 Am. St. Rep. 859, Chief Justice Gaines used this language:

"We apprehend that a plaintiff cannot make a case by intentionally contributing to the injury which the defendant willfully intends to inflict upon him. For example, should one intentionally hurl a missile at another, with the intent to injure, and should the other voluntarily place himself in its way, and thereby receive a battery which he would otherwise have escaped, the person so struck could not recover."

Appellants' contention is that, by substituting the words "drive a car" for the words "hurl a missile" in the second sentence above copied, we have a direct holding by our Supreme Court applicable to the undisputed facts in this case. With this contention we are not in accord. The example employed by the Chief Justice must be considered in connection with the next preceding sentence and with the opinion as a whole. There must be an intention on the part of the plaintiff to contribute to his injuries and thereby make a case in order for the rule to have any application. The opinion as a whole in the Zantzinger Case illustrates the distinction. In that case a trespasser on a train was injured by jumping from the running board to avoid the effects of steam intentionally discharged by the engineer for the purpose of injuring him. The trespasser was intentionally in a dangerous place, but he did not place himself in that place with the intention of having steam discharged upon him, but for the purpose of riding on the train. It was accordingly held that his contributory negligence was no defense against the intentional act of the engineer in discharging the steam. Had the trespasser in that case, knowing that the steam was to be discharged, taken a position on the train which he knew would result in his being scalded, and for the purpose of causing injuries to be inflicted upon himself, then the rule announced in that opinion would have barred his recovery of damages. Absent the elements of intentional self-injury and knowl-

edge that injury would surely result, the rule has no application.

In the instant case we have not a record which discloses, as a matter of law, that Mrs. Nail placed herself in this driveway with the intention of being injured, or at a time when she knew it was impossible for Jackson to stop the car and avoid the injury. Her testimony on that point was as follows:

"I did not mean for that car to hit me when I got out in the driveway. I threw up both hands, and hollered for him to stop. I never dreamed that a gentleman would not stop. Anyone would know that I would be hit, if he didn't stop. When I got out into the driveway I knew that they were going to stop—I felt that they would stop. * * *

"I was bound to have known at that time that I was going to be struck by that car if I didn't get out of the way, but that wasn't the way I meant for it to come out."

Appellants requested no issue to be submitted to the jury on the question of whether Mrs. Nail placed herself in the driveway with the intention and for the purpose of being injured. That was a defensive matter, and was waived by them, unless the evidence of that fact was undisputed, leaving no question for the jury. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084.

In the face of this testimony, and contrary to the very strong presumption that one does not intentionally injure himself, we are called on to hold, as a matter of law, that the purpose and intention of Mrs. Nail, when she stationed herself in this driveway, was to cause an injury to be inflicted upon her, and in that way make out a case of damages against appellants. Such a holding, we think, would not be supported by the uncontradicted evidence, but, on the contrary, would be opposed to its great weight and overwhelming preponderance. The only reasonable deduction which we make from this testimony is that Mrs. Nail had no other thought than that Jackson would not deliberately and intentionally run the automobile against her. She testified that she never dreamed a gentleman would not stop. Appellants would penalize her for indulging in this presumption in favor of their own employee, but in this we cannot concur. It would indeed be a strange rule of law that would permit an intentional perpetrator of an unlawful assault and battery to defend against the consequences of his unlawful act upon the ground that the assaulted person should have known in advance of the consequences of not getting out of his way. The contention reduces itself in final analysis to the proposition that the court should say, as a matter of law, and notwithstanding her testimony to the contrary, that Mrs. Nail knew that Jackson, in order to accomplish the unlawful purposes of Harris, irrevocably intended to commit an assault and battery on her, if she failed to run away. All propositions based upon this and kindred contentions are overruled.

Appellants would apply the law of discovered peril in an inverse order to that in which it is usually applied, and have us hold that, even though appellee did not know of the danger of placing herself in the driveway at the time she first took her station there, yet, while standing there, she discovered the peril of continuing to do so, but made no effort to remove to safety, and for that reason, cannot recover. This contention assumes that at some point in the approach of the automobile, at a time when she could withdraw to a place of safety, appellee realized that injury to her was inevitable, but nevertheless she intentionally remained in the dangerous position, thus inviting the injuries of which she complains. We think what has been said above disposes of this contention. No such issue was requested, and we would not be authorized to hold, as a matter of law, on the record presented, that she ever realized the danger of her position at a time when she could have withdrawn to a place of safety.

In Carsey v. Hawkins, 106 Tex. 247, 163 S. W. 586, a similar question was involved, but our Supreme Court visited the consequences of the doctrine of discovered peril, not upon the plaintiff, but upon the defendant. The failure of the plaintiff to remove his mules to a place of safety was in that case held to be negligence, but not a defense to the negligent act of the defendant in continuing to approach with his car after discovering that the mules were frightened and that injury might result from his continued approach. In McDonald v. Ry. Co., 86 Tex. 1, 22 S. W. 939, 945, 40 Am. St. Rep. 803, Justice Gaines disposes of this theory in this terse language: "One who beats another cannot urge the defense that the plaintiff might have escaped the battery by running away."

Another group of propositions, being Nos. 7 to 16, inclusive, and Nos. 22 to 26, inclusive, are disposed of, or rendered immaterial by an announcement of the well-established rule of law that contributory negligence is no defense to an action for damages for an injury willfully, wantonly, and intentionally inflicted. Galveston, H. & S. A. Ry. Co. v. Zantzinger, supra; Morgan v. Ry. Co., 108 Tex. 331, 193 S. W. 134; McDonald v. Ry. Co., supra.

Proposition No. 21 complains of argument made by counsel for appellee in his closing address to the jury. The statement under this proposition discloses that two separate arguments are complained of, each covered by a bill of exceptions. One of the arguments was a denouncement by appellee's counsel of an argument made by appellants' counsel. Appellants freely concede that the argument of their counsel was improper and should not

have been made, but contend that the reprimand was too severe. As we understand the contention, it is not that appellee's counsel went out of the record and injected improper matter for the jury's consideration, but that their own attorney made the improper argument, and that it was reversible error for appellee's attorney to criticize him for so doing. We cannot sustain this contention. We know of no authorities, and have been referred to none, condemning the character of reply made by appellee's counsel to the improper argument of appellants' counsel.

The other bill of exceptions preserving argument complained of was so qualified by the trial judge as clearly to disclose no reversible error.

By proposition 17 error is assigned to that portion of the court's charge permitting a recovery for "loss of time of plaintiff, if any time was lost, up to the time of the trial." It is contended that there was no evidence of any lost time, or of the value thereof. The eighteenth proposition makes the same contention with regard to "the cost of medical expenses, if any, incurred, that were reasonable and necessary." We do not find it necessary to enter into a discussion of these questions or set out the evidence in this opinion. The appellants' counsel in their very able brief have detailed sufficient evidence in their statement following their propositions to authorize the inclusion of these elements in the court's charge, and a restatement of that evidence in this opinion would serve no other purpose than to unduly lengthen it.

All of the propositions have been considered and are overruled. The judgment of the trial court is accordingly affirmed.